**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| APOTEX, INC., <br>         Plaintiff, <br><br> v. <br><br> CEPHALON, INC., et al., <br>         Defendants. | CIVIL ACTION <br><br> No. 2:06-cv-2768 |
| GIANT EAGLE, INC., <br>         Plaintiff, <br><br> v. <br><br> CEPHALON, INC., et al., <br>         Defendants. | CIVIL ACTION <br><br> No. 2:10-cv-5164 |
| WALGREEN CO., et al., <br>         Plaintiffs, <br><br> v. <br><br> CEPHALON, INC., et al., <br>        Defendants. | CIVIL ACTION <br><br> No. 2:09-cv-3956 |
| RITE AID CORPORATION, et al., <br>         Plaintiffs, <br><br> v. <br><br> CEPHALON, INC., et al., <br>        Defendants. | CIVIL ACTION <br><br> No. 2:09-cv-3820 |

**Goldberg, J.**                                                                                                          May 31, 2017

## MEMORANDUM OPINION

This ongoing antitrust case involves four Hatch-Waxman reverse-payment settlement agreements entered into by Cephalon, Inc., the manufacturer of the brand-name pharmaceutical Provigil, and four generic drug companies. These companies are Barr Pharmaceuticals, Inc.; Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. ("Mylan"); Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc.; and Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc. ("Ranbaxy"). Plaintiffs allege that these settlements unlawfully delayed the market entry of generic Provigil in violation of the Sherman Act.

The parties have submitted numerous motions in limine in anticipation of the liability trial scheduled for June 12, 2017. The only plaintiffs in the upcoming trial are Apotex, Inc., a generic competitor, and a group of owners and operators of retail pharmacies who filed their own separate actions and were excluded from the definition of the Direct Purchaser Litigation Class.[1] The only defendants in the June trial are Mylan and Ranbaxy.[2]

This opinion addresses the omnibus motion filed on behalf of all Plaintiffs, which contains ten separate motions in limine.[3] For the reasons that follow, the motions will be granted in part and denied in part.

---

[1] Over the course of this litigation, these plaintiffs have been referred to as "Individual Plaintiffs," "Retailer Plaintiffs," "Opt-Out Plaintiffs" and "Merchant Plaintiffs."

[2] Use of "Defendants" in this opinion is intended to refer to Mylan and Ranbaxy only.

[3] The omnibus motion was filed on November 15, 2015 before the United States Court of Appeals for the Third Circuit stayed the initial trial date. Subsequent to the omnibus motion being filed, Cephalon, Teva and Barr settled with Apotex. (See Dkt. 06-2768, Doc. No. 1057.) As noted where appropriate, some of the arguments raised in the omnibus motion are now moot as a result of that settlement.

## I. FACTUAL BACKGROUND

In 1997, Cephalon was issued U.S. Patent No. 5,618,845, covering specific formulations of modafinil, the active pharmaceutical ingredient ("API") in Provigil. Cephalon was granted a reissue patent on modafinil, U.S. Patent No. RE 37,516 ("the RE '516 patent") in 2002. Modafinil is a wakefulness-promoting agent used to treat narcolepsy and other sleep disorders.

On December 24, 2002, the Generic Defendants each filed an Abbreviated New Drug Application ("ANDA") seeking to market a generic version of Provigil along with a Paragraph IV certification indicating that Cephalon's RE '516 patent was either invalid or the generic products did not infringe the patent. In 2003, Cephalon filed suit against the Generic Defendants for patent infringement ("the Paragraph IV litigation").

The Paragraph IV litigation between Cephalon and the Generic Defendants settled between December 2005 and February 2006, with the Generic Defendants agreeing to forego releasing their generic modafinil products until April 6, 2012. Plaintiffs in the antitrust case allege that in return for the Generic Defendants agreeing to settle the Paragraph IV litigation and stay off of the market until 2012, Cephalon paid the Generic Defendants millions of dollars in violation of various antitrust laws. This type of settlement—referred to as a reverse-payment settlement—was analyzed by the United States Supreme Court in Federal Trade Commission v. Actavis, Inc., 133 S. Ct. 2223 (2013).

## II. STANDARD OF REVIEW

The purpose of a motion in limine is "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990). The moving party bears the burden of demonstrating that the challenged evidence is inadmissible "on any relevant ground, and the court may deny a motion in limine

when it lacks the necessary specificity with respect to the evidence to be excluded." Leonard v. Stemtech Health Scis., Inc., 981 F. Supp. 2d 273, 276 (D. Del. 2013). "Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." Id.

### III. DISCUSSION

a. Motion in Limine Number 1

In their first motion, Plaintiffs request that Defendants be precluded from offering direct or indirect evidence of their subjective beliefs regarding the merits of the RE '516 Patent because Defendants asserted the attorney-client privilege to block inquiry into those subjective views. Plaintiffs state that it would be unfair to allow Defendants to waive the privilege at the eleventh-hour because Plaintiffs have prepared their case without the benefit of knowing the content of the privileged information.

As an example, Plaintiffs urge that Defendants should be prevented from offering evidence suggesting that their pleadings in the Paragraph IV litigation were "mere advocacy or lawyer arguments" because such evidence would suggest that Defendants' subjective beliefs differed from the positions their attorneys took in court. (Pls.' Mot. pp. 3-4.)

Defendants respond that they do not intend to introduce testimony or evidence previously withheld as privileged. Rather, Defendants state that they intend to present non-privileged information that was made available to Plaintiffs during discovery. For example, Defendants state that they will offer testimony from fact witnesses regarding actions they took during the Paragraph IV litigation and subsequent settlement. Defendants contend that such evidence is relevant to their defense that the outcome of the Paragraph IV litigation was uncertain and that

4

legitimate considerations motivated their decision to settle. Defendants argue that there is no legal authority to support Plaintiffs' request to preclude Defendants from introducing non-privileged evidence in this manner.

I conclude that Defendants may present this type of non-privileged evidence despite their invocation of the attorney-client privilege. In fact, Plaintiffs themselves have argued that they are entitled to offer expert testimony on the absence of non-privileged documents concerning Defendants' due diligence and what that means in terms of the reasonableness of the side agreements. (See Pls.' Resp. to Defs.' Mot. to Exclude Testimony of Thomas Hoxie, pp. 16-17.) I agree with Plaintiffs that this type of evidence is admissible and, as such, Defendants may present relevant non-privileged information to rebut Plaintiffs' arguments in this manner.

Although Plaintiffs have failed to support their broad request for a sweeping pre-trial prohibition, their concerns can, if necessary, be addressed in the context of a developed record and with the benefit of a concrete understanding of the proffered testimony as well as the purpose for which it is being presented. If Plaintiffs believe that Defendants are attempting to present evidence previously withheld as privileged, I will certainly entertain objections to specific lines of questioning at trial. Defendants are directed to question their witnesses with careful attention to these issues and any attempts to introduce evidence previously withheld will not be countenanced. For the foregoing reasons, Plaintiffs' Motion in Limine Number 1 will be denied.

      b. <u>Motion in Limine Number 2</u>

Plaintiffs seek an order precluding Defendants from presenting opinion evidence from fact witnesses that I previously precluded Defendants' experts from offering in the November 5, 2015 <u>Daubert</u> Opinion and Order. See <u>King Drug Co. of Florence, Inc. v. Cephalon, Inc.</u>, 2015

WL 6750899, at *2 (E.D. Pa. Nov. 5, 2015). Plaintiffs urge that Defendants should not be able to elicit the following previously excluded expert opinions through fact witnesses:

1. [A]ny expert opinion contrary to [the] holdings [that '(1) the RE '516 patent is invalid due to the on-sale bar, derivation and obviousness; and (2) the materiality prong of Walker Process fraud has been established'] will not be permitted.

2. Cephalon [cannot] attempt to justify the reverse-payment settlement agreements with evidence that it sought to avoid the risk of invalidation of the RE '516 patent.

3. [A]n expert will not be permitted to testify at trial that certain legal arguments made during the Paragraph IV litigation were 'reasonable' or that Cephalon could have reasonably had a realistic expectation of success on the merits.

4. [T]he validity experts will not be permitted to testify as to any legal standard that was explicitly rejected by this Court during the Apotex litigation.

5. Cephalon's experts will not be permitted to opine that the Generic Defendants' products presently infringe the RE '516 patent.

6. Dr. Bugay's conclusions stemming from his testing of the Generic Defendants' generic Provigil API and tablets using the Hiac/Royco brand light obscuration system are excluded as unreliable.

7. Infringement opinions put forth by other experts that rely upon Dr. Bugay's testing and results will also be excluded as unreliable.

8. [A]n expert cannot simply assume that bioequivalence results in infringement under the doctrine of equivalents.

(Pls.' Mot. pp. 4-5 (alterations in original, internal citations omitted.))

Plaintiffs urge that because these expert opinions were excluded as unreliable and/or as likely to confuse the jury they are equally improper if offered by fact witnesses. Additionally, Plaintiffs contend that Defendants may not present expert testimony from its fact witnesses on

these issues because none of Defendants' fact witnesses have submitted an expert report or disclosure as required by Federal Rule of Civil Procedure 26(a)(2)(A)-(C).

Defendants respond that Plaintiffs' request should be denied because it is overly vague and does not account for what purposes the challenged evidence may be offered. Defendants further object on the grounds that a <u>Daubert</u> ruling which sets limits on expert testimony does not apply to fact witnesses because different standards govern the admissibility of expert and lay witness testimony.

Regarding the first category of challenged testimony, I conclude that Defendants may not elicit an opinion from a fact witness that the RE '516 patent is valid. I already decided that expert opinions of this type are inadmissible, <u>see</u> <u>King Drug</u>, 2015 WL 6750899, at *3, 8-10, and the fact that they may be presented by a lay witness has no impact on the analysis underlying my decision.

Regarding the second category of testimony, Plaintiffs seek to preclude Cephalon from offering evidence from lay witnesses that it settled the Paragraph IV litigation to avoid the risk that the RE '516 patent would be invalidated. As Cephalon is no longer part of the case, this challenge appears to be moot. That said, under <u>Actavis</u>, a patent holder may not justify a reverse-payment settlement agreement with reference to its "litigation uncertainty" and, to the extent that Defendants intend to introduce evidence of Cephalon's litigation uncertainty, I conclude that such evidence is inadmissible regardless of the form that the evidence takes.

Regarding the third category of challenged testimony, Defendants may not elicit from lay witnesses an opinion that the legal arguments advanced during the Paragraph IV litigation were reasonable. As I explained, in the November 5, 2015 <u>Daubert</u> ruling, testimony of this nature would constitute an impermissible legal opinion and usurp the role of the jury. See <u>King Drug</u>

Co. of Florence, 2015 WL 6750899, at *18-20. The reasoning set forth in that opinion applies regardless of whether the witness is testifying under Rule 701 as a lay witness or under Rule 702 as an expert.

However, as I have explained, Defendants may present "evidence <u>aimed at</u> convincing the jury that their positions were reasonable, such as explanation of the arguments made and opinions presented during the Paragraph IV litigation." <u>Id.</u> at *9 n.9 (emphasis in original). Defendants may present such evidence through the testimony of expert or lay witnesses so long as the witnesses "do not directly opine upon reasonableness." <u>Id.</u>

Regarding the fourth category of challenged testimony, Defendants may not elicit fact witness testimony as to any legal standard that was explicitly rejected during the prior patent litigation. Such testimony would be clearly inappropriate on multiple grounds. That said, it is unclear why Plaintiffs believe such a ruling to be necessary – they do not point to specific lay witness testimony designated by Defendants that would fall within this category.

The fifth category of challenged testimony appears to pertain to evidence that Cephalon may have sought to offer and, therefore, is likely moot. To the extent that the issue still needs resolution, I conclude that it would be inappropriate, under Federal Rule of Evidences 701 and 702, for a lay witness, not previously qualified as an expert, to offer an opinion on the technical question of infringement. See <u>Carpenter Tech. Corp. v. Allegheny Techs., Inc.</u>, 2012 WL 5507959, at *1 (E.D. Pa. Nov. 14, 2012) (Collecting cases holding that lay witnesses may not opine on questions of validity and infringement because such opinions require technical or specialized knowledge and Rule 701 explicitly bars lay witnesses from giving opinions based on such knowledge).

8

Regarding the sixth and seventh categories of challenged testimony, I conclude that Defendants may not present testimony from lay witnesses which references or relies, either directly or indirectly, upon Dr. Bugay's conclusions stemming from his testing of the Generic Defendants' API and tablets. I previously excluded these conclusions as unreliable, Id. at *13, and denied Cephalon's motion for reconsideration on this issue. (See Order, Jan. 22, 2016, Doc. No. 1051.) As such, it would be inappropriate for Defendants to circumvent these rulings by presenting Dr. Bugay's excluded opinions through lay witness testimony.

Regarding the eighth category of challenged testimony, I conclude that Defendants may not elicit from lay witnesses an opinion regarding infringement under the doctrine of equivalents. As noted above, witnesses who have not submitted expert reports or disclosures may not opine on the technical issues of infringement.

For the foregoing reasons, Plaintiffs' Motion in Limine Number 2 will be granted in part and denied in part as set forth above.

c. Motion in Limine Number 3

Plaintiffs urge that Defendants should be precluded from referring to or presenting any evidence regarding Cephalon's "risk aversion or litigation uncertainty." (Pls.' Mot. pp. 6-7.)[4] As Cephalon is no longer part of the case, this issue appears to be moot. To the extent that Defendants nonetheless intend to introduce evidence regarding Cephalon's litigation uncertainty, such evidence is inadmissible. See King Drug Co. of Florence, Inc. v. Cephalon, Inc., 2015 WL

---

[4] It is unclear whether Plaintiffs are using the term "risk aversion" synonymously with the term "litigation uncertainty" or whether they understand the terms to connote two discrete concepts. As Plaintiffs fail to offer a definition of "risk aversion" and, at points, use the terms interchangeably, I construe them as such. As I understand it, the term "litigation uncertainty" refers to "the risk of Cephalon losing the infringement litigation against the Generic Defendants and the RE '516 patent being declared invalid or not infringed." King Drug Co. of Florence, Inc. v. Cephalon, Inc., 2015 WL 5783603, at *8 (E.D. Pa. Oct. 5, 2015).

9

5783603, at *8 (E.D. Pa. Oct. 5, 2015) ("opinions that the reverse payments were made to avoid Cephalon's 'litigation uncertainty'—that is, the risk of Cephalon losing the infringement litigation against the Generic Defendants and the RE '516 patent being declared invalid or not infringed—[are] not relevant for the purposes of explaining or justifying the reverse payments.")

    d. <u>Motion in Limine Number 4</u>

Next, Plaintiffs seek an order precluding Defendants from introducing evidence or argument relating to U.S. Patent No. 7,297,346 (the "'346 Patent").[5] According to Plaintiffs, in exchange for Defendants being relieved of discovery obligations related to the '346 Patent, the parties stipulated:

> 1. Defendants will not argue that the '346 patent would be infringed by the Generic Defendants' Generic Provigil products;
>
> 2. Defendants will not argue that the '346 patent would have prevented the Generic Defendants from launching or continuing to market (should entry have occurred) their Generic Provigil products in the "but for" world;
>
> 3. Defendants will not argue that the '346 patent could have been an obstacle to the Generic Defendants launching or continuing to market (should entry have occurred) their Generic Provigil products in the "but for" world in that they would have had to consider potential liability arising from the '346 patent with respect to such a launch or continued marketing (should entry have occurred).

(Pls.' Mot. Ex. G pp. 1-2.) Based on this stipulation, Plaintiffs argue that Defendants should be precluded from introducing <u>any</u> evidence or argument relating to the '346 Patent because Defendants have successfully avoided discovery concerning the '346 Patent by agreeing to "stipulate it out of the case." (Pls.' Mot. p. 9.) Defendants respond that Plaintiffs mischaracterize the scope of the stipulation.

---

[5] The '346 Patent issued on November 20, 2007 – after the Paragraph IV litigation was settled. (Pls.' Mot. p. 8.)

10

From the parties' submissions it is unclear what, if any, evidence or argument concerning the '346 Patent Defendants will seek to introduce. Without the benefit of a developed record, it would be premature to decide what hypothetical evidence or argument would violate the terms of the parties' stipulation. Plaintiffs may, if necessary, renew their objections at trial.

    e. <u>Motion in Limine Number 5</u>

Plaintiffs seek to prevent Defendants from presenting evidence or arguing at trial that they lacked the capacity to manufacture generic Provigil. Citing to letters from Defendants, Plaintiffs note that Defendants stated that they would not assert that they lacked the capacity to manufacture generic Provigil and, therefore, Plaintiffs' requests for discovery on those issues were moot.

Defendants respond that Plaintiffs' request is impermissibly vague because it does not identify with specificity the evidence they seek to exclude. Additionally, Defendants assert that Plaintiffs seeks to exclude evidence beyond the scope of the agreements. According to Defendants, while they agreed not to pursue as a defense that they lacked capacity to manufacture generic Provigil, they did not broadly agree to refrain from introducing evidence or argument concerning their capacity to manufacture for other purposes. For example, Defendants argue that, under the terms of the parties' agreement, they are permitted to introduce capacity evidence for the purpose of establishing the timing and ability of Defendants to launch.

I conclude that Defendants' narrow reading is inconsistent with the broad language of the parties' agreements. In a letter to Plaintiffs, Ranbaxy affirmed that it "will not assert as a defense that it could not launch its generic Provigil product due to capacity constraints or cGMP [current good manufacturing practice] issues." (Pls.' Mot. Ex. I.) Mylan similarly stated that it was not pursuing a "capacity defense." (Pls.' Mot. Ex. K.) If Defendants had intended to preserve the

11

right to present evidence of manufacturing capacity issues for some purpose, the stipulation should have stated as much.

Furthermore, if Defendants are permitted to present evidence and argument regarding their manufacturing capacity, Plaintiffs would be prejudiced. Defendants expressly stated that discovery on these issues was unnecessary as they did not intend to present this evidence in their defense. Plaintiffs were entitled to rely on these representations in completing discovery and preparing for trial. As such, Plaintiffs' Motion in Limine Number 5 will be granted.

f. Motion in Limine Number 6

Next, Plaintiffs note that Defendants have indicated that they intend to argue that they litigated and later settled the Paragraph IV litigation in "good faith." According to Plaintiffs, courts have held that an assertion by a party that it acted in good faith constitutes a waiver of the attorney-client privilege. Plaintiffs urge that Defendants should be precluded from presenting testimony to support such a defense because Defendants withheld discovery of the privileged communications which the jury would need to consider in order to assess the credibility of that testimony.

Defendants correctly respond that this argument conflates an assertion of "good faith" with an "advice of counsel" defense. In the cases Plaintiffs cite, waiver was only found after the party took an affirmative act which placed the privileged information at issue – such as testifying that they believed that their actions were legal. See, e.g., United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).

Furthermore, in their response, Defendants reiterate that they do not intend to present privileged information or rely on an "advice of counsel" defense. Rather, Defendants state that they will introduce non-privileged evidence to outline the reasons behind the settlements. A party

does not waive the attorney-client privilege by presenting non-privileged evidence to suggest that actions were taken in good faith. Plaintiffs do not cite to any binding authority to the contrary. However, if Defendants seek to introduce evidence previously withheld as privileged or present argument that even implicitly suggests reliance on the advice of counsel, Plaintiffs are free to renew their objections. For the foregoing reasons, Plaintiffs' Motion in Limine Number 6 will be denied.

### g. Motion in Limine Number 7

Plaintiffs move to preclude Defendants from arguing or offering evidence to justify the allegedly "supracompetitive pricing" of Provigil on the basis that it (a) allowed Defendants to recoup research and development ("R&D") costs or further invest in future R&D; or (b) otherwise benefitted Defendants or the public. Plaintiffs argue that a patent holder may not artificially extend the term of a patent beyond what it ought to be under a justification that such illegal conduct is necessary to incentivize future innovation or was beneficial to the public in some way.

Defendants respond that Plaintiffs' motion is fatally vague as it does not identify any proposed testimony or documents to be excluded. I agree. Without specific reference to the challenged evidence or an opportunity to review the purpose for which it is presented, I cannot resolve Plaintiffs' objections. Therefore, Plaintiffs' Motion in Limine Number 7 will be denied without prejudice. At trial, Plaintiffs may renew their objections with specific reference to documents or proposed testimony.

### h. Motion in Limine Number 8

Next, Plaintiffs seek an order precluding Defendants from referring to or presenting evidence regarding their "alleged good character or reputation, e.g., evidence of being a good

corporate citizen, having internal corporate governance, spending money on socially valuable research and development efforts, working to increase access to pharmaceuticals or other healthcare, and/or other charitable works." (Pls.' Mot. p. 17.) According to Plaintiffs, all such evidence is irrelevant, prejudicial or inadmissible character evidence under Federal Rule of Evidence 404(a)(1).

Plaintiffs' motion seeks to exclude a broad category of evidence but fails to describe the supposedly objectionable evidence with sufficient specificity to enable a ruling prior to trial. See Leonard, 981 F. Supp. 2d at 276 ("[t]he movant bears the burden of demonstrating that the evidence is inadmissable [sic] on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.") While Plaintiffs accurately note that character evidence is inadmissible to prove that a person acted in conformity with their purported character on a particular occasion, see Fed. R. Civ. P. 404(a)(1), I, however, cannot make the evidentiary ruling that Plaintiffs seek in a vacuum. These types of rulings require evaluation of the specific piece of challenged evidence or line of questioning and the purpose for which it is being offered. For these reasons, Plaintiffs' Motion in Limine Number 8 will be denied without prejudice and Plaintiffs are free to renew these objections at trial.

i. Motion in Limine Number 9

Plaintiffs seek an order precluding Defendants from referring to or presenting evidence regarding any unrelated current or past litigation involving any Plaintiff. According to Plaintiffs, such evidence is entirely irrelevant to a determination of the questions before the jury – i.e., whether Defendants engaged in unlawful anticompetitive activity and issues of antitrust injury. Plaintiffs urge that any de minimis probative value such evidence may have is substantially outweighed by a danger of unfair prejudice, confusion of the issues and/or misleading the jury.

Defendants respond that some prior litigation involving certain Plaintiffs may be relevant to certain issues. For example, Defendants contend that evidence regarding Apotex's prior at-risk launch experience is relevant to whether it is reasonable to assume that Defendants or Apotex would have entered the market at risk.

Although I am skeptical that evidence regarding Plaintiffs' involvement in prior unrelated litigation is relevant and otherwise admissible, Plaintiffs' request for a broad pretrial categorical prohibition on such evidence is premature. Particular evidence of prior litigation and objections thereto must be evaluated on a case-by-case basis. Therefore, Plaintiffs' Motion in Limine Number 9 will be denied without prejudice.

j. Motion in Limine Number 10

Lastly, Plaintiffs seek an order precluding Defendants from offering into evidence hearsay statements made during the Federal Trade Commission's investigative hearings ("FTC hearings"). Plaintiffs contend that the portions of the FTC hearings that Defendants have designated for introduction at trial do not fall within any of the exceptions to the rule against hearsay.

Defendants respond that they have no intention of offering the FTC hearing testimony of witnesses who are available to testify at trial. However, Defendants argue that the FTC hearing testimony of unavailable witnesses is probative, reliable and admissible against all Plaintiffs under Federal Rule of Evidence 804(b)(1). Rule 804(b)(1) provides an exception to the rule against hearsay if the declarant is unavailable at trial and the former testimony:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

15

Defendants contend that the FTC is a predecessor in interest to the Plaintiffs. Citing <u>Lloyd v. American Export Lines, Inc.</u>, 580 F.2d 1179 (3d Cir. 1978), Defendants urge that "predecessor in interest" does not require that the prior case involve identical issues so long as liability is based upon the "same condemned behavior thought to have occurred." <u>Id.</u> at 1186-87. According to Defendants, under this broad standard, the FTC is Plaintiffs' predecessor in interest because they shared similar motives to develop the testimony – i.e., determining whether the settlement agreements represent unlawful restraints of trade.

I conclude that the FTC is the Plaintiffs' predecessor in interest under the Third Circuit's broad formulation of that concept.[6] The FTC and Plaintiffs challenged the same allegedly unlawful conduct by the Defendants and those challenges involved a substantial identity of issues. See <u>Lloyd</u>, 580 F.2d at 1187 ("the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party"); <u>Pfizer, Inc. v. Mylan Laboratories, Inc.</u>, 2006 WL 3198951, at *2 (W.D. Pa. Nov. 3, 2006) ("[a]lthough the trial strategies and financial stakes may differ, it is hard to deny that Apotex and Mylan have a 'similar' motive to cross-examine [the deponent]-both Apotex and Mylan allege that the . . . patent is invalid because it is obvious and unenforceable for inequitable conduct.")

Defendants also correctly note that Plaintiffs at times entered prior FTC hearing testimony as an exhibit at the depositions conducted in this case and confirmed with the deponent that the testimony they gave during the FTC hearings was taken under oath and given

---

[6] Plaintiffs argue that "predecessor in interest" requires actual privity. The Third Circuit has expressly held the opposite. See <u>New Jersey Turnpike Auth. v. PPG Industries, Inc.</u>, 197 F.3d 96, 110 n.21 (3d Cir. 1999) (citing <u>Lloyd</u>, 580 F.2d at 1185–87) ("Privity or a common property interest is not required to establish a predecessor in interest relationship, rather, a shared interest in the material facts and outcome of the case will create such an interest.)

16

truthfully. In light of the foregoing, I conclude that the FTC hearing testimony falls within the hearsay exception set forth under Federal Rule of Evidence 804(b)(1) so long as the declarant satisfies the test for unavailability under Federal Rule of Evidence 804(a).[7] That said, where appropriate, objections to particular portions of testimony from the FTC hearings on other grounds will be entertained at trial. For the foregoing reasons, Plaintiffs' Motion in Limine Number 10 will be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions in Limine will be denied in part and granted in part. An appropriate order follows.

---

[7] In accordance with my ruling on Plaintiffs' Motion in Limine Number 13, such testimony should be introduced generically as testimony from a prior proceeding. Care should be taken by both parties to not reference the fact that the testimony was given in connection with the FTC's investigation or subsequent litigation. (See Order Granting Mot. in Limine No. 13, Jan. 8, 2016.)